## Probst Construction Company v. Maurice Foley.

1. VARIANCE—*Must be Raised in the Trial Court.*—The question of a variance between the pleadings and the proofs can not be raised for the first time in the Appellate Court.

2. VERDICTS—*On Conflicting Evidence.*—Where the evidence is conflicting and the trial judge who saw and heard the witnesses has approved the verdict, this court will not interfere.

3. DAMAGES—*$5,000 not Excessive.*—In this case it is held that $5,000 damages awarded are not excessive.

4. WITNESSES—*Rights upon the Stand.*—A witness upon the stand has an absolute right to respectful treatment, which it is the duty of the court to enforce.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed April 13, 1896.

### STATEMENT OF THE CASE.

This was an action on the case, brought by appellee to recover damages for personal injuries. It resulted in a verdict and judgment in his favor for $5,000.

The appellant was in the contracting and construction business, and had charge of the erection of the Schiller theatre building, at 103 Randolph street, in the city of Chicago. Appellee was in its employ as a common laborer, and on May 20, 1892, was injured by falling through the roof of the building, then in course of construction, and down to the next floor below.

At the time the accident happened, appellee was wheeling concrete on the roof. This material was mixed in the basement and placed in barrows, which were brought up on an elevator to the roof. There was a run-way constructed of two-inch planks, extending from the elevator diagonally across the roof, and it was the duty of appellee to wheel the barrows over this run-way and dump the same, to be spread by other parties as a top dressing.

In constructing the roof iron "beams," six inches deep, and weighing eighteen pounds to the lineal foot, were

placed in position. The distance between these I-beams was six feet six inches from center to center.

The space between the beams was filled in with cement, which was placed in position as follows:   Wooden moulds, called "centers," were put between the beams, resting upon the bottom flanges of the beams.   These centers were arch-shaped, the upper surface being convex.

After the centers were placed in position, the whole space between the beams above the mould was filled in with cement, the upper surface of which was made level and nearly even with the tops of the beams, and on this, after it became dry, was placed a top dressing which made the top of the roof level and smooth.   After the moulds were removed from beneath, the under side, between each pair of beams, would be a cement arch, running the whole length of the beams.

All of these arches were set in imported German Portland cement.

After the cement was put in, the wooden moulds were left in position about three days, until the cement hardened enough to remain set; then they were removed to allow the water to drain out of the cement, and to allow the air to get at the under side, so as to dry the arch.

These moulds were placed there to give the cement the arch shape on the under side, and were left there only long enough to allow the cement to harden sufficiently to keep its shape.

There is no charge in the declaration that the kind of cement used, or the materials entering into it, were improper, or of insufficient cohesive strength to render the roof safe, and there is no charge that this method of constructing the roof was improper, unsafe or dangerous.

Plaintiff's case rests upon the proposition that the roof was not properly supported, and that while he was in the exercise of ordinary care, the roof gave way and precipitated him to the floor below.

The declaration consists of two counts.   In the first it is charged that the defendant "negligently and carelessly failed to provide proper supports to sustain said roof, and

while this plaintiff was upon said roof, as aforesaid, and in the exercise of due care on his part, and without knowledge that said roof was not properly supported, said roof fell."

The second count charges that the defendant " negligently and carelessly failed to provide supports, or props, or stays to support said roof, and did direct this plaintiff to go upon said roof, when it knew, or might have known, by the exercise of ordinary care and prudence, that the support of said roof was wholly insufficient, on account of which  *  *  * said roof or a portion of said roof, in and upon which plaintiff was then and there wheeling concrete, fell."

WILLIAM B. KEEP, attorney for appellant.

WILCOX & GETTYS and BRANDT & HOFFMAN, attorneys for appellee.

MR. JUSTICE WATERMAN DELIVERED THE OPINION OF THE COURT.

It is urged that as there is no evidence tending to show that the roof as a whole was improperly supported, there is no proof to sustain the plaintiff's declaration. This is but a variance, which, not having been pointed out on the trial, where by amendment the objection could easily have been removed, it can not for the first time be insisted upon here.

Conceding that the supports to the cement arches were left in position as long as is usual, the fact remains that either by reason of the plank upon which appellee was walking falling upon and breaking through the cement, or because appellee stepped off this plank upon the cement, the arch gave way and appellee, falling through the opening, was injured.

Appellee knew nothing of the character of the cement work; he was told to walk upon the plank, and it is contended that this rested upon the iron beams, and so could not break through the cement. If the plank did all the while rest entirely upon the iron beams, it would not interfere with the cement, but if it slipped a few inches either lengthwise or sidewise, at one end, such end might come

upon the cement, and when appellee stepped thereon might break through. That a portion of this plank did go through the hole down which appellee fell, is testified by two witnesses. There is some uncertainty about this; other witnesses testifying that the plank remained in its proper place. With such conflict the jury, as was to be expected, found for the plaintiff. The trial judge has approved the verdict; he saw and heard the witnesses; if satisfied that the defendant's version of this was true, he should have granted a new trial. We can not, upon the record here presented, in the face of the action of the trial court, say that as to the falling of the plank the plaintiff's statement is untrue.

Unless it be assumed that the plaintiff stepped off the plank, it can not be said that he did not exercise ordinary care.

The damages awarded seem large, but are not so great as to shock our sense of right, or to clearly indicate that the jury was swayed by passion or prejudice.

The manner and method of counsel for the plaintiff in his cross-examination of witnesses for the defendant was not such as we can approve.

As we have before said (Chicago City Ry. Co. v. Baron, 57 Ill. App. 469), all persons while upon the witness stand, be they high or low, rich or poor, ignorant or learned, of good or evil repute, leading orderly or dissolute lives, have an absolute right to respectful treatment, which it is the duty of the trial court to enforce.

A witness is not, during his examination, to be ridiculed because of his imperfect pronunciation or bad grammar; nor should the court permit counsel to ask questions in an insulting manner.

The facts of this case, as presented by the record here filed, are such that we are of the opinion the jury would, have found as they did, had counsel for plaintiff omitted all of which complaint is made. Nor is the finding one which we look upon as unjust, although we should have been better satisfied had the damages awarded been less.

The judgment of the Circuit Court is affirmed.